IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| MJJG Restaurant, LLC, and Restaurant Row Waterway, LLC, RT Entertainment, LLC, d/b/a The Gold Club, a South Carolina Limited Liability Company, | ) ) ) ) ) | Civil Action No.: 4:13-885-MGL |
| Plaintiffs, | ) ) | **OPINION AND ORDER** |
| v. | ) ) | |
| Horry County, South Carolina, Rennie Mincey, in her official capacity as Horry County Zoning Administrator, Horry County Board of Zoning Appeals, | ) ) ) ) ) ) | |
| Defendants. | | |

Before this Court are Plaintiffs' Motions for Preliminary Injunction brought pursuant to

Federal Rule of Civil Procedure 65. (ECF No. 6 & ECF No. 37.)  Plaintiffs ask this Court to issue

a preliminary injunction enjoining the enforcement of Chapter 526 of the Horry County Zoning

Ordinance against Plaintiffs as well as a preliminary injunction enjoining the enforcement of Horry

County Ordinances  29-13 and 30-13, adopted on September 3, 2013.  For the reasons set forth

herein, this Court denies Plaintiffs' requested relief.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs MJJG Restaurant LLC and Restaurant Row Waterway LLC ("Plaintiffs") brought

this action on April 3, 2013 against Defendants Horry County, South Carolina, Rennie Mincey, in

her official capacity as Horry County Zoning Administrator, and the Horry County Board of Zoning

Appeals challenging the constitutionality of Section 526 of the Horry County Zoning Code ("Section

526") and seeking damages as well as declaratory and injunctive relief related to the application of

Section 526. (ECF No. 1.)  On May 8, 2013, Plaintiffs filed their Motion for Preliminary Injunction indicating that Plaintiff MJJG Restaurant LLC ("MJJG Restaurant") desired to open a restaurant and night club offering dance performances to patrons under the trade name "The Gold Club" (hereinafter "Gold Club II") on property owned by Plaintiff Restaurant Row Waterway LLC ("Restaurant Row").  (ECF No. 6-1 at 1.)  By way of additional background, Plaintiff MJJG Restaurant sought a business license and a certificate of zoning compliance for the property and the proposed business. (ECF No. 6-1 at 1-2.)  Plaintiff's application for zoning compliance was denied on the grounds that Plaintiff MJJG Restaurant was to be an adult cabaret which did not meet the location requirements as set forth in Section 526. (ECF No. 6-1 at 2.)  Plaintiffs contend that the denial of the request for the issuance of a certificate of zoning compliance is tantamount to a prior restraint on protected expression and was improperly based on the Horry County Planning and Zoning Department's investigation of another night club operated by Plaintiff MJJG Restaurant's principal, also known as the Gold Club (hereinafter "Gold Club I") which was determined to be operating as an adult cabaret.  (ECF No. 6-1 at 2-3.)  Plaintiffs maintain that the decision of the Horry County Board of Zoning Appeals prevents Plaintiffs from opening the proposed restaurant/night club which suppresses constitutionally protected speech that Plaintiffs intended to present.  (ECF No. 6-1 at 3-4.)  Plaintiffs seek injunctive relief in order to enjoin the enforcement of Section 526 against the prospective business such that Plaintiffs may present the desired speech. (ECF No. 6-1 at 4.)  Defendants filed a response on May 31, 2013 challenging Plaintiffs' standing to challenge the ordinance. (ECF No. 23.)

On September 4, 2013, Plaintiffs moved for leave to file an amended and supplemental complaint adding a claim asserting Defendants continue to impose a prior restraint on Plaintiffs

MJJG Restaurant and Restaurant Row by not granting a second application for a certificate of zoning compliance submitted on August 5, 2013.  (ECF No. 36.)  Additionally, Plaintiffs added federal claims arising from the enactment of two Horry County Ordinances on September 3, 2013, Ordinances 29-13 and 30-13, and also added RT Entertainment LLC, d/b/a The Gold Club ("RT Entertainment"), as a new party-plaintiff impacted by the two ordinances.  (ECF No. 36 at 1.) Plaintiffs contend that these ordinances redefine what constitutes an adult cabaret in Horry County in an attempt to capture the erotic performances presented at certain nightclubs in Horry County, including a pre-existing Gold Club adult entertainment establishment operating at 2254 Jason Boulevard.  (ECF No. 36-1.)  On the same day, Plaintiff filed a motion for a temporary restraining order ("TRO") and preliminary injunction seeking to enjoin Defendants, their officers, agents, servants, employees, and attorneys, from enforcing Horry County Ordinances 29-13 and 30-13, adopted on September 3, 2013.  (ECF No. 37.)  Defendants filed a response in opposition to Plaintiffs' motion on September 6, 2013.  (ECF No. 41.)  On September 6, 2013, this Court heard arguments on Plaintiffs' motion for a temporary restraining order only.  (ECF No. 43.)  The Court issued an order denying Plaintiffs' motion for a temporary restraining order on September 9, 2013 finding that Plaintiffs failed to make a clear showing based on the applicable factors as required for the issuance of a temporary restraining order.  (ECF No. 45.)

Plaintiffs filed an unopposed motion for leave to file a second amended complaint on October 3, 2013, adding a number of factual allegations to support the constitutional claims and also adding an additional pendent state law claim for a declaration that Plaintiff RT Entertainment is a grandfathered use at its current location.  (ECF No. 46.)  On January 9, 2014, this Court held a hearing on Plaintiffs' two motions for preliminary injunctions and heard live testimony and

-3-

arguments from counsel concerning the requested relief.[1]  (ECF No. 50, 52, 58.)  Additionally, the Court directed that the record be left open to allow the parties to conduct depositions, engage in additional discovery, and to submit post-hearing briefs.  (ECF No. 58, 67, 71.)  At this juncture, these matters have been fully briefed and are ripe for adjudication.

## STANDARD OF REVIEW

Rule 65 of the Federal Rules of Civil Procedure governs the issuances of injunctions and restraining orders.  Both the TRO and preliminary injunctions are "extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). In order to obtain a preliminary injunction, a plaintiff must demonstrate: "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest."  *Winter v. Natural Resources Defense Council, Inc.*  555 U.S. 7, 19-20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009), overruling *Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977), vacated on other grounds, 130 S.Ct. 2371 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir.2010) (per curiam). The substantive standards for granting a request for a temporary restraining order and entering a preliminary injunction are the same.  *See, e.g., Virginia v. Kelly*, 29 F.3d 145, 147 (4th

---

[1]The parties filed a joint motion to reschedule a preliminary injunction hearing scheduled to allow the Court to hear both of Plaintiffs' pending preliminary motions at the same time.  As Plaintiffs did not withdraw their first motion regarding Section 526, but instead expressly asked this Court to consider it along with a second motion regarding Ordinances 29-13 and 30-13, this Court addresses both motions fully in the instant order.  Although it may be that the initial request for injunctive relief has been rendered moot by the repeal of Section 526, the Court's review of the issues appears to have some bearing on one of Plaintiff's primary arguments.

Cir.1994) (applying preliminary injunction standard to a request for temporary restraining order). All four requirements must be satisfied. *The Real Truth About Obama, Inc.*, 575 F.3d at 346. As the Fourth Circuit has explained, the Supreme Court requires "that the plaintiff make a clear showing that it will likely succeed on the merits at trial." *The Real Truth About Obama, Inc.*, 575 F.3d at 346 (internal citation omitted). Further, the Supreme Court in *Winter* emphasized the public interest requirement, i.e., requiring courts to "'pay particular regard for the public consequences in employing the extraordinary remedy of injunction,'" *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)).

## ANALYSIS AND DISCUSSION

I.    <u>First Amendment Challenge to Horry County Ordinances</u>

"As a general principle, the First Amendment bars the government from dictating what we see or read or speak or hear"—i.e., "abridging the freedom of speech." U.S. Const. amend. I; *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245 (2002). "The Constitution protects not just 'political and ideological speech,' but also 'live entertainment,' including 'nude dancing' and other performances involving nudity or other sexual elements." *Carandola, Ltd. v. Bason*, 303 F.3d 507, 511 (4th Cir. 2002) (citing *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 65–66 (1981)); *see also Reno v. ACLU*, 521 U.S. 844, 874 (1997) ("In evaluating the free speech rights of adults, we have made it perfectly clear that sexual expression which is indecent but not obscene is protected by the First Amendment." (internal quotation marks and citation omitted)); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 224 (1990) (collecting First Amendment cases concerning restrictions on adult bookstores, adult live theater performances, motion picture theaters, and nude dancing)*; Davenport v. City of Alexandria, Va.*, 710 F.2d 148, n.6 (4th Cir.1983)("Live entertainment is protected

speech.").

Still,"being 'in a state of nudity' is not an inherently expressive condition;" nude erotic dancing is "expressive conduct," although the Court believes that it "falls only within the outer ambit of the First Amendment's protection." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000). Accordingly, such "[e]xpressive conduct enjoys less protection than does pure speech and restrictions on its exercise are more likely to be constitutionally permissible." *Legend Night Club v. Miller*, 637 F.3d 291, 300 (4th Cir. 2011)(quoting *Steakhouse, Inc. v. City of Raleigh, N.C.*, 166 F.3d 634, 637 (4th Cir. 1999)). In the context of a First Amendment analysis, the level of scrutiny a court applies when considering a regulation of expressive conduct depends on whether the regulation is content-based or content-neutral. The inquiry takes into account the purpose for which the regulation was adopted. *See Carandola, Ltd. v. Bason*, 303 F.3d 507, 512 (4th Cir. 2002). Thus, "[i]f the regulation was adopted to burden disfavored viewpoints or modes of expression, a court applies strict scrutiny." *Carandola*, 303 F.3d at 512. "If, by contrast, the regulation was adopted for a purpose unrelated to the suppression of expression—e.g., to regulate conduct, or the time, place, and manner in which expression may take place—a court must apply a less demanding intermediate scrutiny." *Id.* at 512-513. In the latter context, the ordinance is deemed content-neutral because it is aimed not at the content of the expression but at the secondary effects "on the surrounding community, namely, . . . crime rates, property values, and the quality of the city's neighborhoods." *See City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 434 (2002).

In *Young v. American Mini Theatres*, Inc., 427 U.S. 50, 70 (1976), the Supreme Court recognized that regulating this type of expressive conduct based on content may be necessary to protect other legitimate interests and treated the ordinance in question as if it were content-neutral

because the speech is less than fully protected.  *See also  City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425 (2002) (finding that because the ordinance did not ban adult theaters all together (but merely required that they be distanced from certain locations) it should be deemed content- neutral and properly analyzed as a time, place and manner regulation);  *Richland Bookmart, Inc. v. Nichols*, 137 F.3d 435 (6th Cir. 1998) ("The Court did not try to maintain that the ordinance was, in fact, content-neutral; it stated only that it might be treated as if it were content-neutral because, like commercial speech, it is less than fully protected.")  These "so-called 'content-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication."  *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986).  Additionally, the regulating of the time, place, and manner of the protected expression must be narrowly tailored to achieve the government's interest.  *Ward v. Rock Against Racism*, 491 U.S. 781, 798-99 (1989).  To summarize the applicable analysis which consists of three steps: first, the court must determine whether the regulation constitutes an outright ban of a particular sexually oriented business or only restricts the manner in which it may operate, i.e., a time, place and manner regulation; second, the court must determine whether the ordinance is content-based or content-neutral; and third, the court must determine whether the regulation is designed to serve a substantial government interest, whether it is narrowly tailored to achieve that interest, and whether it unreasonably limits alternative avenues of communication.  *See Alameda Books, Inc*., 535 U.S. at 434 (plurality) (describing *Renton*'s three-step analysis); *see also Daytona Grand, Inc. v. City of Daytona Beach, Fla.*, 490 F.3d 860, 870 (11th Cir.2007) (noting that time, place and manner regulations are evaluated under the three-part test established by the Supreme court in *Renton*).

-7-

II.    <u>Relevant Horry County Ordinances</u>

1. Examination of Section 526 of the Horry County Zoning Code

Chapter 526 of the Horry County Zoning Code governs the location of "adult entertainment establishments" in the unincorporated areas of Horry County Section 526.1 provides a classification of such establishments and Section 526.2 explains where such establishments can locate: in Highway Commercial Districts, as well as in Heavy and Light Industrial Districts subject to several conditions.  In relevant part, adult entertainment must be 2,000 feet from certain residential districts and structures in any zoning district, more than 2,000 feet from any house of worship, day care center, public or private elementary or secondary education school, public park, public library, cemetery, or any motion picture establishment which shows G or PG rated movies to the general public on a regular basis, and more than 2,500 feet from another adult entertainment business.  (ECF No. 48-1 at 1.)

Section 526.3 of the zoning coded defines an "adult cabaret" as

> An establishment whose principal business purpose is the offering to customers of live entertainment which is intended to provide sexual stimulation or sexual gratification to such customers, and which is distinguished by or characterized by an emphasis on matter depicting, describing or relating to 'specified sexual activities' or 'specified anatomical areas.'  Establishments that do not provide adult entertainment more than twelve (12) times per calendar year shall not be defined as an adult cabaret.

(ECF No. 48-1 at 5.)  The terms "specified sexual activities" and "specified anatomical areas" are also defined in the zoning code.  (ECF No. 48-1 at 6.)

> Specified anatomical areas:
>
> (a)    Less than completely and opaquely covered human genitals, pubic region, buttocks, anus, or female breasts below a point immediately above the top of the areolae; or
>
> (b)    Human male genitals in a discernibly turgid state even if completely and

-8-

opaquely covered.

Specified sexual activity:

(a)     Human genitals in a state of sexual stimulation or arousal;

(b)     Acts of human masturbation, sexual intercourse or sodomy;

(c)     Fondling or other erotic touchings of human genitals, pubic regions, buttocks or female breasts;

(d)     Flagellation or torture in the context of a sexual relationship;

(e)     Masochism, erotic or sexually oriented torture, beating or the infliction of pain; or

(f)     Erotic touching, fondling or other such contact with an animal by a human being.

(ECF No. 48-1 at 6.)

2. Examination of Ordinance 29-13

Ordinance 29-13 amends Chapter 12.5 of the Horry County Code to add a new article to establish licensing requirements and regulations for adult entertainment establishments.  (ECF No. 48-2 at 1.)  The preamble acknowledges that adult entertainment establishments are a category of establishments that have "deleterious secondary effects" which the County intends to minimize and control in the best interest of its citizens.  (ECF No. 48-2 at 1.)  The Ordinance is thus, intended "to regulate such businesses as adult entertainment establishments through a narrowly tailored ordinance designed to serve the substantial government interest in preventing the negative secondary effects of adult entertainment establishments" without suppressing any protected speech activities.  (ECF No. 48-2 at 2.)  The Ordinance's stated purpose is supported by "evidence of the adverse secondary effects of adult uses presented in hearings and in reports made to the County Council, and on findings, interpretations ,and narrowing constructions" in several relevant federal and South Carolina

-9-

cases, as well as various reports concerning secondary effects occurring in and around adult entertainment establishments. (ECF No. 48-2 at 4-5.) "Adult Cabaret" is defined in Section 12.5-142 to mean "a nightclub, bar, juice bar, restaurant, bottle club, or similar commercial establishment that regularly features live conduct characterized by semi-nudity." (ECF No. 48-2 at 7.) An establishment cannot avoid classification as an adult cabaret by offering or featuring nudity in the alternative. (ECF No. 48-2 at 7.) The term "nudity" is also defined meaning the "showing of the human male or female genitals, pubic area, vulva, or anus with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering of any part of the nipple or areola." (ECF No. 48-2 at 8.) "Semi-Nude or Semi-Nudity" means the "showing of the female breast below a horizontal line across the top of the areola and extending across the width of the breast at that point . . . [to] include the lower portion of the human female breast, but . . . not include any portion of the cleavage of the human female breast exhibited by a bikini, dress, blouse, shirt, leotard, or similar wearing apparel provided the areola is not exposed in whole or in part." (ECF No.48-2 at 9.)

The Ordinance explains the requirements and application/issuance process for an "adult entertainment establishment license" and "adult entertainment establishment employee license," as well as fees and inspection requirements. (ECF No. 48-2 at 11-15.) Also outlined are procedures and standards on hearings related to the licensing process and the transfer of licenses, hours of operation ("no adult entertainment establishment shall be or remain open for business between 12:00 midnight and 6:00 a.m. on any day"), and signage and lighting requirements. (ECF No. 48-2 at 17-20.) Pursuant to Section 12.5-156, all pre-existing adult entertainment establishments lawfully operating in Horry County and all adult entertainment establishment employees are to be granted a de facto temporary license to continue operation or employment for a period of 90 days following the

effective date of the ordinance.  (ECF No. 48-2 at 21.)

Finally, Section 12.6-157 sets forth prohibited conduct and limitations on spacing (semi-nude employee must remain at least six feet from all patrons on a stage at least eighteen inches from the floor in a room of at least six hundred square feet), touching (no employee who appears semi-nude in an adult entertainment establishment shall knowingly or intentionally touch a customer or the clothing of a customer on premises and vice versa), and room occupation (no operator of an adult entertainment establishment shall knowingly or recklessly allow a room in the adult entertainment establishment to be simultaneously occupied by a patron and a semi-nude employee unless the operator is present in the room), and signage (a sign summarizing some of the provisions of the ordinance to be posted near the entrance of the establishment in such a manner as to be clearly visible to patrons upon entry).  (ECF No. 48-2 at 21-22.)

3.  Examination of Ordinance 30-13

Ordinance 30-13 amends Section 526 of the Zoning Ordinance of Horry County.  (ECF No. 48-3.)  The preamble acknowledges that adult entertainment establishments are a category of establishments that have "deleterious secondary effects" which the County intends to minimize and control in the best interest of its citizens.  (ECF No. 48-3 at 1.)  The Ordinance is thus, intended "to regulate such businesses as adult entertainment establishments through a narrowly tailored ordinance designed to serve the substantial government interest in preventing the negative secondary effects of adult entertainment establishments" without suppressing any protected speech activities.  (ECF No. 48-3 at 2.)  To that end, Horry County amended Section 526 in its entirety.  (ECF No. 48-3 at 2.)  The Ordinance's stated purpose is supported by "evidence of the adverse secondary effects of adult uses presented in hearings and in reports made to the County Council, and on findings, interpretations, and

-11-

narrowing constructions" in several relevant federal and South Carolina cases, as well as various reports concerning secondary effects occurring in and around adult entertainment establishments. (ECF No. 48-3 at 3-5.)

"Adult Cabaret" is defined in Section 526.2 to mean "a nightclub, bar, juice bar, restaurant, bottle club, or similar commercial establishment that regularly features live conduct characterized by semi-nudity." (ECF No. 48-3 at 6.) Further, an establishment cannot avoid classification as an adult cabaret by offering or featuring nudity in the alternative. (ECF No. 48-3 at 6.) The term "nudity" is also defined meaning the "showing of the human male or female genitals, pubic area, vulva, or anus with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering of any part of the nipple or areola." (ECF No. 48-3 at 7.) "Semi-Nude or Semi-Nudity" means the "showing of the female breast below a horizontal line across the top of the areola and extending across the width of the breast at that point . . . [to] include the lower portion of the human female breast, but . . . not include any portion of the cleavage of the human female breast exhibited by a bikini, dress, blouse, shirt, leotard, or similar wearing apparel provided the areola is not exposed in whole or in part." (ECF No.48-3 at 7.)

Section 526.3 sets out the applicable location provisions—adult entertainment establishments are permitted in the "Highway Commercial, Limited Industrial, and Heavy Industrial" zones provided that they are not located within 1,500 feet of a residential zoning district, residential structure, house of worship, day care center, public or private elementary or secondary education school, public park, public library, cemetery, or any motion picture establishment which shows G or PG rated movies to the general public on a regular basis, and within 750 feet of any other adult entertainment establishment. (ECF No. 48-3 at 8-9.)

III.    Motion for Preliminary Injunction by Plaintiffs MJJG Restaurant LLC and Restaurant Row
        Waterway LLC  (ECF No. 6)

Based on the record, the Court finds that Plaintiffs have not clearly shown that they are likely to succeed on the merits, nor have they shown that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in their favor, and that an injunction is in the public interest.

1. **Substantial Likelihood that Plaintiff will Succeed on the Merits**

Plaintiffs MJJG Restaurant LLC and Restaurant Row Waterway LLC argue that Defendants' refusal to issue a certificate of zoning compliance based on the content of dance performances that Plaintiffs might present in the future constitutes an unconstitutional prior restraint on expression. (ECF No. 6-1 at 5.)  Plaintiffs also argue that the definition of "adult cabaret" in Section 526 is unconstitutionally overbroad in that it operates to "ensnare" constitutionally protected activity or otherwise legitimate conduct that has no connection to the sort of adverse secondary effects that would justify content-neutral restrictions on adult expression.  (ECF No. 6-1 at 9, 15.)  Plaintiffs contend that the definition of "adult cabaret" is unconstitutionally vague in that the ordinance fails to give notice to citizens as to what is prohibited conduct and does not ensure fair enforcement, particularly because of several key terms in the definition are undefined.  (ECF No. 6-1 at 16-19.) In sum, Plaintiffs contend that they are entitled to a preliminary injunction because Horry County's decision to deny Plaintiffs' application for a certificate of zoning compliance imposed a prior restraint, and because the Section 526 is facially overbroad and vague.

Defendants argue that Plaintiffs misapply the prior restraint label and that any argument about Horry County's Board of Zoning Appeals's decision fails because Plaintiffs' intended use is within the scope of the adult entertainment definitions in the zoning ordinance.  (ECF No. 23 at 2.)

Similarly, Defendants argue that if Plaintiffs' intended use falls within the scope of the adult entertainment definitions, they lacks standing to challenge the ordinances as facially vague and overbroad under the exception to those doctrines recognized in *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 59-61 (1976). Alternatively, if the intended use is outside of the scope of the adult entertainment zoning regulations, Defendants contend that although Plaintiffs could challenge the application of the zoning ordinances to its intended operation, Plaintiffs would lack standing to bring facial challenges to the ordinance. (ECF No. 23 at 2.)

Based in part on evidence and documentation concerning Gold Club I and its manner of operation as well as information provided on the business license application submitted in conjunction with Gold Club II, Horry County Planning and Zoning staff concluded that Plaintiffs MJJG Restaurant LLC and Restaurant Row Waterway LLC's intended operation was as an adult entertainment establishment which was not allowed at the proposed location and denied the application. (ECF No. 23-1 at 3-7.) The County's proceedings, as it relates to the zoning compliance process and Plaintiffs MJJG Restaurant LLC and Restaurant Row Waterway LLC is the subject of the first motion for preliminary injunction filed in this case. (ECF No. 6.)

A.  Denial of Certificate of Zoning Compliance as a Prior Restraint on Expression.

Ordinarily, the government would bear the burden of demonstrating the constitutionality of the ordinances but here, where a plaintiff is seeking a preliminary injunction, the burden shifts to the plaintiff to prove that it is likely to succeed on the merits. *See Winter*, 555 U.S. at 20. "Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by 'a clear showing' that, among other things, it is likely to succeed on the merits at trial." *Real Truth*, 575 F.3d at 345 (citing *Winter*,

-14-

555 U.S. at 22). This requirement is far stricter than the requirement that a plaintiff must demonstrate only a "grave or serious question for litigation." *Id.* at 347. As a first point, Plaintiffs argue that Defendants' denial of a certificate of zoning compliance constitutes an unconstitutional prior restraint on expression in violation of the First Amendment.

The zoning compliance process at issue here is not properly analyzed as a prior restraint. Concerning a similar "prior restraint" challenge relative to zoning ordinances impacting an adult movie theater, the Supreme Court indicated that "[t]he mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not a sufficient reason for invalidating these ordinances" as a prior restraint on free speech. *Young*, 427 U.S. at 62; *see also Mom N Pops, Inc. v. City of Charlotte*, 979 F. Supp. 372, 388 (W.D.N.C. Aug. 22, 1997), aff'd, 162 F.3d 1155 (4th Cir.1998) (unpublished opinion). ("A zoning ordinance per se is not a prior restraint. Nor does taking reasonable steps to gather the necessary information to effect a zoning ordinance which is otherwise a valid time/place/manner restriction render it a prior restraint."); *Bigg Wolf Discount Video Movie Sales, Inc. v. Montgomery Cnty., Md.*, 256 F. Supp. 2d 385, 400 (D. Md. Mar. 28, 2003)("Zoning restrictions, such as the one at issue here, are subject instead to a time, place, and manner restriction analysis . . . ."). In fact, as Defendants highlight, the Supreme Court has enumerated "established exceptions" to the prior restraint doctrine to include when "rejection of the application [is] based on any regulation of time place, or manner related to the nature of the facility or applications from other users." *See Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 555-556 (1975); *Christy v. Randlett*, 932 F.2d 502 (6th Cir.1991)(noting that the Supreme Court enumerated established exceptions to the prior restraint doctrine). Here, because the zoning ordinance and the review process does not act as a blanket prohibition, but instead considered

the time, place, and manner of the proposed facility, the exception applies and the zoning and licensing scheme is not properly subject to analysis as a prior restraint. *See Mom N Pops, Inc. v. City of Charlotte*, 979 F. Supp. at 389. Plaintiffs are not entitled to injunctive relief on this ground.

B. Definition of Adult Cabaret as Facially Overbroad

Defendants maintain that Plaintiffs MJJG Restaurant and Restaurant Row lack standing to bring a facial challenge as it relates to the definition of "Adult Cabaret" in Section 526. (ECF No. 23 at 10.) Defendants highlight as the key issue whether Plaintiffs intend to come within the scope of the regulation. (ECF No. 23 at 11.) Defendants argue that Plaintiffs lack standing to challenge the ordinance based on vagueness or overbreadth based on an exception first set forth in *American Mini Theatres* and applied by the Fourth Circuit in *Mom N Pops*— where an ordinance clearly applied to the plaintiff, the plaintiff lacked standing to challenge the ordinance based on vagueness or overbreadth. *Mom N Pops, Inc. v. City of Charlotte*, 162 F.3d 1155, at *6 (4th Cir. 1998). In other words, Defendants argue that an establishment lacks standing to challenge a definition that clearly applies to it as constitutionally overbroad. (ECF No. 23 at 12.) Alternatively, even assuming Plaintiffs have standing to challenge the definition of "adult cabaret," Defendants maintain that the on-point cases from the Fourth Circuit and elsewhere establish that the definition is not constitutionally overbroad. (ECF No. 23 at 12.)

Assuming without deciding that Plaintiffs have standing, this Court agrees that Plaintiffs cannot satisfy the applicable burden required to obtain the relief sought—an injunction barring the enforcement of Section 526 (defining the term "adult cabaret"). A plaintiff "must overcome a 'heavy burden' to succeed on a facial challenge to legislation," *North Carolina Right to Life, Inc. v. Leake*, 525 F.3d 274 (4th Cir. 2008), because facial invalidation is "strong medicine to be applied sparingly

-16-

and only as a last resort." *United Seniors Ass'n v. Social Sec. Admin.*, 423 F.3d 397, 406 (4th Cir.2005) (internal quotation marks omitted).  The Fourth Circuit has concluded that "a law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications."  *Giovanni Carandola, Ltd. v. Bason*, 303 F.3d 507, 512 (4th Cir. 2002)(internal quotations marks and citations omitted).  Thus, in order to prevail, a plaintiff must demonstrate that the regulation's overbreadth is "'not only . . . real, but substantial as well, judged in relation to the [challenged regulation's] plainly legitimate sweep,' and also that no 'limiting construction' or 'partial invalidation' could 'remove the seeming threat or deterrence to constitutionally protected expression.'"  *Id.* (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

Although Plaintiffs make a broad facial attack on the zoning ordinance, the regulation at issue is far narrower than a regulation applicable to the general public—it concerns the location of "adult entertainment establishments" in Horry County that regularly depict specified sexual activities or specified anatomical areas.  Plaintiffs have not shown that the potentially overbroad applications are substantial—performances and conduct occurring outside of an adult cabaret as it is defined are unaffected by the Ordinance, and those occurring in such an adult entertainment establishment containing the sexual emphasis that defines an "adult cabaret" would be within the Ordinance's legitimate sweep.  "[T]here must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds."  *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984).  To succeed at this juncture, Plaintiffs must demonstrate, by a clear showing, that they are likely to succeed on the merits of their claim that the Ordinance is facially unconstitutional.  Even in the unique First Amendment arena, the Court finds that Plaintiffs have

-17-

failed to meet this heavy burden.

C.  Definition of Adult Cabaret as Facially Vague

Plaintiffs also challenge the definition of "adult cabaret" as unconstitutionally vague.  (ECF No. 6-1 at 16.)  Defendants maintain that Plaintiffs MJJG Restaurant and Restaurant Row lack standing to challenge the definition of "adult cabaret" on facial vagueness grounds, a claim they otherwise argue fails on the merits.  (ECF No. 23 at 14.)  Assuming again, without deciding, that Plaintiffs have standing to challenge the definition, this Court finds that Plaintiffs fail to meet their burden to demonstrate a likelihood of success on the merits of their claim that the Ordinance is unconstitutionally vague.

Specifically, Plaintiffs challenge several aspects of the definition of adult cabaret: 1) its initial phrase—"An establishment whose principal business purpose is the presentation of live entertainment which is intended to provide sexual stimulation or sexual gratification to its customers . . . ." concerning what constitutes a "principal business purpose;"  2) the phrase "live entertainment which is intended to provide sexual stimulation or sexual gratification to its customers," because the terms "sexual stimulation or sexual gratification," are undefined; and 3) the phrase "Establishments that do not provide adult entertainment more than twelve (12) times per calendar year shall not be defined as an adult cabaret" because "adult entertainment" is not defined in the ordinance.  (ECF No. 6-1 18-20.)  The Court concludes that Plaintiffs are not likely to succeeding in attacking the phrases and definitions as unconstitutionally vague.

"'A statute can be impermissibly vague for either of two independent reasons.  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement.'"

-18-

*U.S. v. Lanning*, 773 F.3d 476, 482 (4th Cir. 2013) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). The vagueness doctrine is particularly important in the First Amendment arena because "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (internal quotations marks omitted); *see also Imaginary Images, Inc. v. Evans*, 612 F.3d 736, 749 (4th Cir. 2010)("In assessing a vagueness challenge, a court must ask whether the government's policy is 'set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with.'" (internal citation omitted)). Still, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward, 491* U.S. at 794.

The Court concludes that the challenged phrases are sufficiently specific and precise to provide people of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited. *See Wag More Dogs, Ltd. Liability Corp. v. Cozart*, 680 F.3d 359, 371 (4th Cir. 2012); *Imaginary Images, Inc.*, 612 F.3d at 750 (rejecting adult entertainment establishment's vagueness challenge as "wishful thinking" because it was clear what conduct the mixed beverage policy reached and what the dancers did because the terms were matters of every day speech and of common usage). As to the first point, the district court in *Mom N Pops* rejected a facial challenge to an adult entertainment definition employing the "principal business purpose" limiting language and the same outcome is warranted here. *See Mom N Pops*, 979 F. Supp. at 392 (acknowledging several cases which have upheld similar language). Secondly, an ordinary person would know the meaning of the terms "sexual stimulation or gratification." These terms have been found to be commonly understood—and therefore constitutional—in several cases. *See Ward v. County of Orange*, 55 F.

-19-

Supp. 2d 1325, 1334 (M.D. Fla. 1999) (rejecting vagueness challenge to these same two terms), aff'd in relevant part, remanded in part, 217 F.3d 1350, 1356 n.5 (11th Cir. 2000); *see also Stansberry v. Holmes*, 613 F.2d 1285, 1290 (5th Cir.1980) (noting that such terms are not vague); *SDJ, Inc. v. City of Houston*, 636 F. Supp. 1359, 1367 (S.D.Tex. Jun. 3, 1986) (same), aff'd, 837 F.2d 1268 (5th Cir.1988).   Finally, based on the case law and in the context of the entire ordinance and the referenced introductory phrase, the term "adult entertainment" is not impermissibly vague.  *See also U.S. v. Williams*, 553 U.S. 285, 294 (2008) ("In context . . . meanings are narrowed by the commonsense canon of *noscitur a sociis*—which counsels that a word is given more precise content by the neighboring words with which it is associated.")  Accordingly, the Court finds it unlikely that Plaintiffs will succeed on the merits of a vagueness claim of these phrases.

In sum, Plaintiffs have not established a likelihood of success on the merits of their asserted prior restraint and facial overbreadth and vagueness challenges.

## 2.    **Irreparable Harm in the Absence of Injunctive Relief**

Plaintiffs argue that it will suffer irreparable harm if this Court does not enjoin the enforcement of Chapter 526 against Plaintiffs.  (ECF No. 6-1 at 20.)  This, Court however, has determined that Plaintiffs MJJG Restaurant and Restaurant Row are not likely to succeed on the merits of their claims in the absence of a violation of free speech rights.  Accordingly, Plaintiffs are also not likely to suffer irreparable harm in the absence of preliminary relief.  *See Mom N Pops*, 979 F. Supp. at 394 (holding that plaintiff had failed to show a loss of free speech rights, which was necessary to justify preliminary injunction).

## 3.    **Balancing of the Equities**

As to this factor, Plaintiffs contend that it is inconceivable that the issuance of a preliminary

injunction will cause harm to any citizens or to Defendants because Plaintiffs only seek a certificate of zoning compliance for a use permitted in the zoning district where Plaintiff Restaurant Row's property is located. (ECF No. 6-1 at 21.) The Court must disagree.

In upholding the zoning administrator's determination and interpretation of the zoning ordinance regarding an appeal for the Gold Club II, the Horry County Zoning Board of Appeals expressly found that sexually oriented businesses are associated with numerous documented adverse secondary impacts and noted that the County has a substantial interest in separating residential areas from such negative impacts. (ECF No. 23-1 at 6.) To that end, the Horry County Zoning Board of Appeals record in this case contains substantial evidence regarding the negative secondary effects of adult/sexually oriented businesses (ECF Nos. 23-2 & 23-3) to include case law, various investigative reports and surveys, land use studies, and articles regarding crime and illicit conduct associated with adult entertainment businesses. The record thus suggests potential harm to Defendants and others as outlined in the Board's findings and the Court cannot conclude that Plaintiffs prevail on this factor. *See also Mom N Pops*, 979 F. Supp. at 394-395 ("The likelihood of harm to Defendants should such an injunction issue is in proportion to the likelihood of the dangers articulated in the preamble of the adult zoning ordinance (lowered property values, increased crime rates, blighting of neighborhoods, etc.)")

4.      **Injunctive Relief in the Public Interest**

Finally, Plaintiffs argue that the last factor meriting injunctive relief is also satisfied because it is in the public interest to uphold a constitutionally protected right. (ECF No. 6-1 at 21.) Because Plaintiffs, however, have not shown a constitutional violation, preserving enforcement of the zoning ordinance and scheme "is in the public interest, tending to mitigate or eliminate deleterious secondary

effects." *Mom N Pops*, 979 F. Supp. at 395.

Having considered the factors as outlined above, this Court concludes that a preliminary injunction as requested by Plaintiffs should not be granted. Accordingly, the Motion for Preliminary Injunction by Plaintiffs MJJG Restaurant LLC and Restaurant Row Waterway LLC (ECF No. 6) is DENIED.

IV.    Motion for a Preliminary Injunction by Plaintiffs MJJG Restaurant LLC, Restaurant Row Waterway LLC and RT Entertainment, LLC d/b/a The Gold Club (ECF No. 37)

Based on the record, Plaintiffs have not clearly shown that they are likely to succeed on the merits, nor have they shown that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in their favor, and that an injunction is in the public interest.

1.    **Substantial Likelihood that Plaintiff will Succeed on the Merits**

In their second motion for a preliminary injunction Plaintiffs MJJG Restaurant and Restaurant Row challenge two newly enacted ordinances, Ordinances 29-13 and 30-13 as a prior restraint. (ECF No.37 at 2.) Additionally, new party-plaintiff RT Entertainment LLC, as operator of the restaurant/night club known as The Gold Club ("The Gold Club I"), joins the lawsuit seeking to enjoin the enforcement of these new ordinances such that it may continue its operations at its present location. (ECF No. 37 at 1-2.) Plaintiff The Gold Club I contends that it has operated as a restaurant/nightclub offering erotic entertainment to its patrons for the past eight years in such a manner as to fall outside of the law's coverage as to what constitutes an "adult cabaret." (ECF No. 37-1 at 3.) More specifically, Plaintiff The Gold Club I asserts that it presented dance performances by entertainers who appeared with opaque pasties covering the nipple and areola of their breasts and Brazilian-cut bikinis to cover their bottoms in a manner it alleges was in good faith and consistent

with Horry County's interpretation of "adult cabaret." (ECF No. 37-1 at 3.) Plaintiff The Gold Club I argues that it operated for several years without incident and without any claim that it was not in compliance. (ECF No. 37-1 at 3.) Plaintiff The Gold Club I argues that Horry County introduced and passed the two ordinances not only to prevent MJJG Restaurant from presenting dance performances at its proposed location but also to prohibit The Gold Club I and other nightclubs in Horry County from continuing to present erotic dance performances by redefining what constitutes an "adult cabaret." (ECF No. 37-1 at 4.)

Plaintiffs argue that the new ordinances are content-based restrictions designed to suppress sexual speech which cannot pass strict scrutiny. (ECF No. 37-1 at 11.) As an alternative argument, Plaintiffs assert that the ordinances cannot survive a constitutional challenge under the intermediate scrutiny standard applicable to content-neutral laws. (ECF No. 37-1 at 14.) Specifically, Plaintiffs maintain that the new laws fail to provide alternative avenues of communication, disproportionately burden speech, are facially unconstitutional in that they impose a requirement of a license to present expression without preserving the status quo, and allow for unconstitutional warrantless searches of businesses. (ECF No. 37-1 at 16-28.) Further, Plaintiffs question Defendants' asserted rationale in seeking to address adverse secondary effects. (ECF No. 37-1 at 28-29.) Defendants' response emphasizes that the new ordinances merely preserve the status quo for previously lawful businesses and that the evidence in the record shows that The Gold Club I was illegally operating as an "adult cabaret" as the term was previously defined under the law. (ECF No. 41 at 1-3.)

A. New Ordinances are Content-Neutral Restrictions Subject to Intermediate Scrutiny

Plaintiffs argue that Ordinances 29-13 and 30-13 are content-based and must satisfy strict scrutiny—a test Plaintiffs maintain the ordinances cannot meet. (ECF No. 37-1 at 14.) In the

alternative, in claiming that intermediate scrutiny is not entirely deferential, Plaintiffs contend that even if the ordinances are evaluated under the standard for content-neutral laws, they fail to pass constitutional muster.  (ECF No. 37-1 at 14, 16.)  As noted above,  the relevant considerations are whether the regulations are designed to serve a substantial government interest, i.e., adverse secondary effects and whether the regulation operates in such a manner, i.e., narrowly tailored, so as to leave open alternative avenues of communication.  *See Renton*, 475 U.S. at 47.

In this Court's view, these ordinances are properly analyzed as time, place, and manner regulations.  The ordinances in question do not ban adult entertainment altogether but instead aim to control the secondary effects of such entertainment establishments on the community by restricting when and where such businesses operate.  *See Independence News, Inc. v. City of Charlotte,* 568 F.3d 148, 154 (4th Cir. 2009 ).  Relevant here, the County has indicated its intent to regulate such businesses as adult entertainment establishments through narrowly tailored ordinances designed to serve the substantial government interest of preventing the negative secondary effects of adult entertainment establishments.  (ECF No. 48-2 at 2 & 48-3 at 2.)  If the ordinance is a content-neutral time, place, and manner regulation, then the ordinance is subject to intermediate scrutiny. *Imaginary Images, Inc.,* 612 F.3d at 742.  Regulations that are "'content neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication."  *Renton*, 475 U.S. at 47.  The weight of the relevant and governing case law supports the conclusion that regulations that target the secondary effects of sexually-oriented, adult businesses are treated as content-neutral and subject to intermediate scrutiny.  *See Independence News, Inc.*, 568 F.3d at 151-155 (zoning ordinance designed separate adult establishments from sensitive uses was properly deemed a content-neutral time, place

-24-

and manner regulation for the purposes of a First Amendment analysis in that it was aimed at addressing the lowered property values, increased crime rates, and neighborhood blight rather than the content of adult uses); *D.G. Rest. Corp. v. City of Myrtle Beach*, 953 F.2d 140, 146-148 (4th Cir. 1991) (directing the district court to dissolve the injunction entered prohibiting enforcement of a nudity ordinance challenged by a nightclub restaurant business and further determining that the ordinance was a constitutional content-neutral time, place, and manner restriction aimed at combating secondary effects); *McDoogal's East, Inc. v. Cnty. Comm'rs of Caroline Cnty.*, 341 F. App'x 918, 924 (4th Cir. 2009)(unpublished opinion)(concluding that the county's ordinances restricting the location of adult-oriented businesses was a content -neutral time, place, and manner regulations, such that an unsuccessful zoning applicant's First Amendment challenge was subject to intermediate scrutiny rather than strict scrutiny).  Because Plaintiffs are seeking a preliminary injunction, Plaintiffs must demonstrate a likelihood that they will succeed on the merits by showing that Defendants will not be able to meet their burden that the zoning ordinances: 1) advance a substantial governmental interest; 2) are narrowly tailored; or  3) provide adequate alternative avenues of communication. Accordingly, the Court will further address Plaintiffs' demonstration of a likelihood of success on the merits based on the intermediate scrutiny considerations set forth by Plaintiffs in their alternative argument.

  B.  Alternative Avenues of Communication

   As part of their intermediate scrutiny arguments, Plaintiffs contend that Ordinance 30-13 fails to provide alternative avenues for communication.  (ECF No. 37-1 at 16.)  Plaintiffs indicate that they expect that the evidence will show that less than 1% of the land in Horry County is available for adult uses once certain spacing restrictions are taken into account.  (ECF No. 37-1 at 18.)  Plaintiffs argue

that courts "have weighed available alternative sites against the total size of the municipality in question [and] have routinely found ordinances which allow adult uses to operate on less than one percent of the total available land in a city to provide an inadequate number of receptor sites as a matter of law . . . ."  (ECF No. 37-1 at 17.)  Plaintiffs assert that the ordinance will eliminate adult speech in Horry County unless enjoined.  (ECF No. 37-1 at 18.)  Defendants note that Ordinance 30-13 significantly relaxes the location restrictions for adult businesses, and argue that the evidence will show more than ample parcels for Plaintiffs to open and operate adult establishments in Horry County.  (ECF No. 41 at 23.)

"Neither the Supreme Court nor the Fourth Circuit has completely refined the test from *Renton* for determining whether particular sites are constitutionally available for adult entertainment business relocation." *Bigg Wolf Discount Video Movie Sales, Inc. v. Montgomery Cnty.*, 256 F. Supp. 2d at 395–96.  Thus, location regulations for adult businesses are constitutional so long as they do not effectively deny adult businesses "a reasonable opportunity to open and operate." *Renton*, 475 U.S. at 54.  A First Amendment violation does not arise simply because businesses must "fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees." *Id.*  "A plaintiff must show something greater than mere inconvenience or economic undesirability." *McDoogal's East, Inc.*, 341 F.App'x at 930.  The Supreme Court has "never suggested that the First Amendment compels the Government to ensure that adult theaters . . . will be able to obtain sites at bargain prices." *Id.* (citing *Renton*, 475 U.S. at 54); *see also Daytona Grand, Inc.*, 490 F.3d at 871 ("the economic feasibility of relocating to a site is not a First Amendment concern.").  Additionally, "the Constitution does not mandate that any minimum percentage of land be made available for certain types of speech." *Allno Enters., Inc. v. Baltimore*

-26-

*Cnty., Md.*, 10 F.App'x 197, 201 (4th Cir. 2001) ( internal citation and quotation marks omitted) (unpublished opinion); *see also Big Dipper Entm't, LLC v. City of Warren*, 641 F.3d 715, 718–19 (6th Cir. 2011) (the question of whether the plaintiff had a reasonable opportunity to open and operate an adult business "does not turn on arbitrary percentages or formulas. Depending on the facts of the case, of course, percentages or formulas can be relevant to the outcome; but that does not mean that the same percentage or formula governs in every case. The First Amendment does not proscribe a Uniform Zoning Code.").

    *Renton* makes clear that commercial viability is not an appropriate consideration. *Renton*, 475 U.S. at 53-54. For example, land deemed available for adult businesses in *Renton* included "'acreage in all stages of development from raw land to developed, industrial, warehouse, office, and shopping space.'" *Id.* at 53 (internal citation omitted). A case from the Eleventh Circuit, *David Vincent, Inc. v. Broward County, Florida*, 200 F.3d 1325 (11th Cir. 2000), cited favorably in this Circuit, synthesizes the rulings from other circuits and provides a general guideline for answering questions regarding how to determine the type of sites that should be considered available:

> First, the economic feasibility of relocating to a site is not a First Amendment concern. Second, the fact that some development is required before a site can accommodate an adult business does not mean that the land is, per se, unavailable for First Amendment purposes. The ideal lot is often not to be found. Examples of impediments to the relocation of an adult business that may not be of a constitutional magnitude include having to build a new facility instead of moving into an existing building; having to clean up waste or landscape a site; bearing the costs of generally applicable lighting, parking, or green space requirements; making due with less space than one desired; or having to purchase a larger lot than one needs. Third, the First Amendment is not concerned with restraints that are not imposed by the government itself or the physical characteristics of the sites designated for adult use by the zoning ordinance. It is of no import under Renton that the real estate market may be tight and sites currently unavailable for sale or lease, or that property owners may be reluctant to sell to an adult venue.

*David Vincent, Inc.*, 200 F.3d at 1334–1335. As set forth in *Allno Enterprises, Inc. v. Baltimore*

*County, Maryland*, 10 F.App'x 197, 201 (4th Cir. 2001)(unpublished opinion), the relevant inquiry is whether the ordinance allows the establishment "an adequate number of sites to which it can relocate if it so chooses," *Allno Enter., Inc*., 10 F.App'x at 201, keeping in mind that "the First Amendment is not concerned with restraints that are not imposed by the government itself." *David Vincent*, 200 F.3d at 1335.

Accordingly, Plaintiffs' concerns about "spacing and location restrictions,"resident fears, public proclamations about limited location sites, and private deed restrictions (ECF No. 37-1 at 18) simply have no constitutional significance. *Allno Enter., Inc.*, 10 F.App'x at 202 ("A property is not rendered 'unavailable' by the bald and unsupported conclusions of an adult business."). Plaintiffs contend that the new ordinance would likely leave less than 1% of the land in Horry County available for adult uses. (ECF No. 37-1 at 18.) Even assuming Plaintiffs' 1% figure is correct, this alone does not demonstrate Plaintiffs' likelihood of success on the merits as there is no minimum percentage of land that must be made available to adult entertainment businesses, particularly without a basis to evaluate specific circumstances. *See Maages Auditorium v. Prince George's Cnty., Md.*, No. 13-1722, 2014 WL 884009, *9 (D. Md. Mar. 5, 2014) ("Even assuming that the 0.05% figure is accurate, that alone does not demonstrate Plaintiffs' likelihood of success on the merits as there is no minimum percentage of land that must be made available to adult entertainment businesses.")

In this case, at the preliminary injunction hearing and on brief, Defendants assert that the ordinances leave more than 79 sites, totaling approximately 416 acres, where adult establishments may operate–many in prime commercial areas. (ECF No. 60; ECF No. 71 at 11.) Defendants have put forth maps and other record evidence presenting multiple sites which meet the requirements of

the Ordinance and outlining locations of currently operating establishments.[2]  (Defs.' Ex. D-G); *McDoogal's East, Inc.,* 341 Fed. Appx. at 930 ("Although in this case the record does not reflect the exact percentage of available land open to [Adult Oriented Businesses] the County demonstrated multiple sites which met the requirements of the Moratorium and the Ordinance.")  In conclusion, Plaintiffs have not met their burden of demonstrating a likelihood of success on the merits on this aspect of the analysis.

C.  Disproportionate Burden on Speech

Next, Plaintiffs argue that the ordinances are an attempt to reduce secondary effects by reducing speech.  (ECF No. 37-1 at 20.)  Plaintiffs argue that the government must demonstrate that it has adopted a regulation that reduces secondary effects without working a reduction in the overall availability of sexual expression.  (ECF No. 37-1 at 20.)  Plaintiffs argue that these ordinances overly restrict speech in that they: 1) fail to provide alternative locations for adult businesses; 2) limit the hours during which the establishments may operate; 3) prohibit entertainers from performing while seminude, unless they are at least 6 feet from any patron and on a stage that is at least 18 inches high and in a room that is at least 600 square feet, further prohibit touching of a patron/employee or his or her clothing, tipping, and limit customers and entertainers' ability to be in a room alone; and 4) impose a burden in requiring businesses and employees to be licensed.  (ECF No. 37-1 at 20-21.) Plaintiffs favor their interpretation of Justice Kennedy's concurrence in *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 444 (2002) in suggesting that these restrictions, collectively, unreasonably limit actual protected speech in their effort to reduce secondary effects. (ECF No. 37-1

_____

[2]Plaintiffs do not directly challenge the findings or the sufficiency of the number of sites—instead Plaintiffs argue that the evidence of adequate relocation sites is irrelevant.  (ECF No. 67 at 4-5, 18-19.)

at 19-20.)

Plaintiffs' argument must be rejected and Plaintiffs' reliance on Justice Kennedy's concurrence in *Alameda Books* (explaining the rationale for applying intermediate scrutiny), for support for this proposition is unpersuasive.[3]  As a practical matter, Plaintiffs' proportionality argument is in fact an allegation that Horry County cannot demonstrate that their regulations are narrowly tailored.  "[A] regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but . . . it need not be the least restrictive or least intrusive means of doing so."  *Ward*, 491 U.S. at 798.  The requirement of narrow tailoring is satisfied as long as the regulation promotes a substantial government interest that would be achieved in a less effective manner if the regulation was not in place.  *Id.* at 798-99.  The "standard does not mean that a time, place, or manner regulation may burden substantially more speech than is necessary to further the government's legitimate interests.  Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals."  *Id.* at 799.  Accordingly, Justice Kennedy's opinion cautions that a municipality "must advance some basis to show that its regulation has the purpose and effect of suppressing secondary effects, while leaving the quantity and accessibility of speech substantially intact."  *Alameda Books*,  535 U.S. at 449.[4]

---

[3]It is within the context of identifying "the claim a city must make in order to justify a content-based zoning ordinance" that Justice Kennedy stated that "[t]he rationale for the ordinance must be that it will suppress secondary effects—and not by suppressing speech." *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 449-50 (2002).

[4]At the preliminary injunction hearing and in their post-hearing brief, Plaintiffs focused their arguments on two issues: 1) Plaintiffs asserted that the effect of Ordinances 29-13 and 30-13 was to completely eliminate live adult entertainment in unincorporated Horry County, contrary to Justice Kennedy's opinion in *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002); and 2) because Horry County's

At the preliminary injunction stage, Plaintiffs have not demonstrated that the government will fail to establish its burden that the zoning ordinances are narrowly tailored. Of note, ordinances outlining the sorts of regulations at issue in this case have been upheld across the country. *See, e.g., LLEH, Inc. v. Wichita Cnty., Tex.*, 289 F.3d 358 (5th Cir. 2002) (upholding the constitutionally of several regulations adopted by a county regarding sexually oriented businesses to include distance requirements, under which such businesses could not be located within 1,500 feet of a church, residence, school, or other listed establishments, or within one mile of a prison, operating requirements, under which partially or totally nude performers could not be within six feet of patrons and had to be on stages raised at least 18 inches above the floor, and design and layout requirements, under which premises must be configured in such a manner as to give inspecting law enforcement personnel an unobstructed view); *Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., Fla.*, 630 F.3d 1346 (11th Cir. 2011)(upholding constitutionality of ordinance that required semi-nude employees to remain at least six feet from any patron or customer and on a stage at least 18 inches from the floor and in a room of at least 1,000 square feet, prohibited employees from touching customers or customers' clothing, and restricted hours of operation); *Entm't Productions, Inc. v. Shelby County, Tenn.*, 721 F.3d 729 (6th Cir. 2013)(ordinance that in part, requires all adult-oriented establishments and their employees to obtain a license did not violate the First Amendment); *Deja Vu of Nashville, Inc. v. Metropolitan Gov't of Nashville and Davidson Cty.*, 274 F.3d 377, 395 (6th

---

zoning law governing the location of adult cabarets in effect before the challenged laws were adopted was unconstitutional, Plaintiffs are entitled to remain at their respective locations as lawful, prior non-conforming uses. (ECF No. 67 at 1.) This second argument must also be rejected based on the Court's conclusions regarding certain aspects of the former (repealed) version of Section 526 which is the subject of Plaintiffs' first motion for preliminary injunction. The unconstitutionality of that zoning law has not been established such that Plaintiffs would be "grandfathered" as a non-conforming use nor is the designation of non-conforming use one to which Plaintiffs would automatically be entitled.

Cir. 2001) (considering sexually oriented business licensing provisions and no touch/buffer zone provisions); *Mitchell v. Comm'n on Adult Entm't Establishments*, 10 F.3d 123, 139 (3d Cir.1993) (upholding an ordinance requiring sexually oriented businesses to be closed from 10:00 PM to 10:00 AM, Monday through Saturday, and requiring them to be closed all day on Sundays and holidays). Additionally, Plaintiffs' argument that the combined impact of the individual provisions has a disproportionate impact on speech is also without merit. The Court agrees with the conclusion reached by the Sixth Circuit in addressing a similar argument: "[g]iven the overwhelming weight of precedent against their case, we asked Plaintiffs–Appellants at oral argument which specific provisions of the Ordinance allegedly violated the First Amendment. Plaintiffs–Appellants could offer no answer except to argue that the sum of the Ordinance's parts placed such a significant burden on speech as to violate the First Amendment, even though each individual provision is constitutional. This argument is unavailing." *See Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 299 (6th Cir. 2008).

    D.  License Application Process as a Prior Restraint on Expression

    Plaintiffs also launch a prior restraint argument as it relates to the license application process for adult entertainment businesses. (ECF No. 37-1 at 23-24.) Specifically, Plaintiffs argue that the process fails to preserve the status quo in that The Gold Club I and other businesses that presented erotic entertainment in Horry County must immediately and abruptly cease presenting their speech because they "were outside of the definition of an 'adult entertainment establishment'" and therefore are not entitled to the temporary licenses provided for under the ordinances. (ECF No. 37-1 at 24-25.) Defendants reject Plaintiffs' "status quo" argument in maintaining that Horry County is not required to give a temporary license to a business that was operating unlawfully under the prior law.

-32-

(ECF No. 41 at 26-27.)  Defendants highlight the deposition testimony of RT Entertainment/ MJJG Restaurant's principal as well as affidavit and video evidence demonstrating that dancers often exposed their breasts and buttocks and engaged in fondling and stimulation of these areas, thus, The Gold Club I operated as an "adult cabaret" as the term was previously defined in the law.  (ECF No. 23-1 at 15; ECF Nos. 71-1, 71-2, 71-3, 71-4; Defs.' Ex.B (Rule 30 (B)(6) Deposition).

A licensing ordinance for sexually oriented businesses is not an unconstitutional prior restraint as long as it 1) avoids unbridled discretion in the licensing decision maker; 2) places limits on the time within which the decision maker must issue the license; and 3) provides for prompt judicial review of an adverse decision.  *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225–28 (1990). Here, the licensing ordinance 29-13 does not operate as an unconstitutional prior restraint.  Ordinance 29-13 sets forth objective criteria and standards relevant to the issuance of licenses, including a 30-day time period for issuance following the filing of a completed application (Section 12.5-144) and provides for prompt judicial review of an intent to deny, suspend, or revoke a license (Section 12.5-150).  Further, lawfully operating preexisting adult entertainment establishments are to be immediately issued temporary licenses, thereby preserving legal operations and maintaining the status quo. (ECF No. 48-2 at 13 & 21.)  The status quo is also preserved during the appeals process.  (ECF No. 48-2 at 17.)  For these reasons, the Court concludes that Horry County's licensing ordinance does not operate as an unconstitutional prior restraint.  *See generally City of Littleton v. Z.J. Gifts D–4, LLC*, 541 U.S. 774, 783 (2004), 777 & 783 (2004) ("[T]he ordinance at issue here does not seek to censor material.  And its licensing scheme applies reasonably objective, nondiscretionary criteria unrelated to the content of the expressive materials that an adult business may sell or display.")

E.  Warrantless Search

-33-

Plaintiffs argue that Ordinance 29-13 violates Plaintiffs' rights under the Fourth and Fourteenth Amendments in that the provision allows the Chief of Police to inspect portions of the adult entertainment establishment from time to time to ensure compliance with the Ordinance. (ECF No. 37-1 at 25-26.) Thus, Plaintiffs argue that the ordinance authorizes warrantless searches of Plaintiffs' businesses in violation of the Fourth and Fourteenth Amendments. (ECF No. 37-1 at 26.) Plaintiffs' arguments do not demonstrate a likelihood of success on the merits on this point.

A broad administrative search of a business will not violate the Fourth Amendment where: (1) there is a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made; (2) the warrantless inspection is necessary to further the regulatory scheme; and (3) the statute's inspection program, in terms of the certainty and regularity of its application, provides a constitutionally adequate substitute for a warrant. *New York v. Burger*, 482 U.S. 691, 702-703 (1987). Here, Section 12.5-146 allows for administrative inspections but only "from time to time on an occasional basis" in the portions of the premises where patrons are permitted, during the times when the establishment is occupied by patrons and open to the public. (ECF No. 48-2 at 15.) The purpose of the inspections is to ensure compliance with specific regulations of the ordinance. (ECF No. 48-2 at 15.) Accordingly, in viewing Section 12.5-146 in light of the requirements of *Burger*, the Court cannot find that Plaintiffs would likely succeed on the merits of their Fourth Amendment claim. *See Allno Enter., Inc*., 10 F.App'x at 204; *see also Andy's Rest. & Lounge, Inc. v. City of Gary*, 466 F.3d 550, 557 (7th Cir. 2006)(affirming district court's determination that similar inspection language did not implicate privacy interest protected by the Fourth Amendment);

F.  Secondary Effects in Dispute

Plaintiffs seek the opportunity to challenge Horry County's asserted rationale for its laws and

make the case that adult businesses do not cause adverse secondary effects. (ECF No. 37-1 at 28-29.) At the preliminary injunction stage, Plaintiffs must demonstrate that it is likely that the government will fail to demonstrate that the regulations are designed to advance a substantial government interest, specifically combating the negative secondary effects associated with adult entertainment businesses. In view of the record and briefing on the matter, Plaintiffs have failed to demonstrate the required likelihood of success on the merits as to this aspect of the analysis.

The Supreme Court has granted flexibility to governments to develop regulation designed to protect their communities from the secondary effects of protected adult speech. *See, e.g., City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986). Here, the stated purpose, preamble, and legislative record for Ordinances 29-13 and 30-13 illustrate  Horry County's intentions in preventing adult businesses' secondary effects. The ordinances expressly state the purpose: "to regulate adult entertainment establishments in order to promote the health, safety, and general welfare of the citizens of the County, and to establish reasonable and uniform regulations to prevent the deleterious secondary effects of adult entertainment establishments within the County." (ECF No. 48-2 at 3; ECF No. 48-3 at 3.) The Ordinances further state that "it is neither the intent nor effect of this [ordinance] to restrict or deny access by adults to sexually oriented materials protected by the First Amendment, or to deny access by distributors and exhibitors of sexually oriented entertainment to their intended market." (ECF No. 48-2 at 3; ECF No. 48-3 at 3.) In *Imaginary Images*, the Fourth Circuit explained that although the government must "'fairly support' its policy, it need not settle the matter beyond debate or produce an exhaustive evidentiary demonstration." *Imaginary Images, Inc.*, 612 F.3d at 742. The Supreme Court has held that "[t]he First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by

-35-

other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *Renton*, 475 U.S. at 51–52. Moreover, cities may rely on the evidentiary foundation established in other judicial opinions if the expressive activity is of the same character. *Pap's A.M.*, 529 U.S. at 296–97. Officials "'need not show that each individual adult establishment actually generates the undesired secondary effects.'" *Imaginary Images, Inc.*, 612 F.3d at 747 (quoting *Independence News, Inc.*, 568 F.3d at 156). A demonstration that adult entertainment businesses as a category produce secondary effects is sufficient. *Id.* Further, the government's policy expertise is entitled to deference and Horry County may "demonstrate the efficacy of its method of reducing secondary effects 'by appeal to common sense,' rather than 'empirical data.'" *Imaginary Images, Inc., 612* F.3d at 742 (citing *Alameda Books*, 535 U.S. at 439-40 (plurality)); *see also Giovani Carandola, Ltd. v. Fox*, 470 F.3d 1074, 1082 (4th Cir.2006) ("even without considering any evidence, we can conclude that the State has a substantial interest in regulating nude and topless dancing, because such entertainment has 'a long history of spawning deleterious effects.'"(internal citation omitted)).

Here, Horry County enacted the subject ordinances based on evidence of adverse secondary effects of adult uses presented in hearings and in reports made to the County Council, findings and interpretations based on case law, and reports concerning secondary effects occurring in and around adult entertainment establishments across the country. (ECF No. 48-2 at 4-5; ECF No. 48-3 at 3-5; ECF Nos. 54-57.) Such evidence is more than sufficient to establish the interests that the ordinances seek to further in preventing secondary effects. *See Mom N Pops, Inc.*, 979 F. Supp. at 390 ("The language of the preamble provides a clear statement of intent. By this ordinance Charlotte seeks to further what is unquestionably a substantial interest in curbing the blighting of neighborhoods and to

-36-

protect the integrity of schools, churches, and areas where children frequent.")  Plaintiffs have not demonstrated otherwise.  Given the  above-noted standards, and the absence of any demonstration by Plaintiffs that the applicable presumptions should not apply, Plaintiffs have failed to demonstrate the required likelihood of success on the merits necessary for a preliminary injunction for this aspect of the intermediate scrutiny inquiry.  Upon review of the evidence and in light of the testimony presented in this case, the Court concludes that Plaintiffs cannot show a likelihood of success on the merits.

2.     **Irreparable Harm in the Absence of Injunctive Relief**

Plaintiffs argue that the two new ordinances threaten RT Entertainment's constitutional rights in that they would force The Gold Club I to close its doors and seek a new location, or alternatively, compel RT Entertainment to change the content of the entertainment The Gold Club I presents to its audience.  (ECF No. 37-1 at 29.)  Plaintiffs maintain that MJJG Restaurant and Restaurant Row's First Amendment rights are subject to a continuing prior restraint as to the content of the expression they can present.  (ECF No. 37-1 at 30.)

"[I]n the context of an alleged violation of First Amendment rights, a plaintiff's claimed irreparable harm is 'inseparably linked' to the likelihood of success on the merits of plaintiff's First Amendment claim."  *WV Ass'n of Club Owners and Fraternal Services, Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009)(internal citation omitted).  This Court acknowledges that Plaintiffs will suffer irreparable harm if it suffers a loss of its First Amendment freedoms.  *See Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir.2003) ("[T]he Supreme Court has explained that 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))).  But Plaintiffs have failed to show that Ordinances 29-13 and 30-13, which have not been applied to them, have violated their

-37-

constitutional rights.  Plaintiff RT Entertainment can continue its operation as long as it does not operate as an adult entertainment establishment.  Plaintiffs MJJG Restaurant and Restaurant Row can open a restaurant and nightclub at the proposed location as long as they will not operate as an adult entertainment establishment as defined by the terms of the zoning ordinance or Plaintiffs can opt to open an adult entertainment establishment at an alternative location.  The Court has concluded that Plaintiffs are not likely to succeed on the merits, therefore they are also not likely to suffer irreparable harm in the absence of an injunction.

### 3.    **Balancing of the Equities**

As to this factor, Plaintiff contends that it is inconceivable that the issuance of a preliminary injunction would cause any harm to any citizens or to Defendants in that Plaintiffs only seek to maintain the status quo while the constitutional validity of these ordinances is litigated.  (ECF No. 37-1 at 30.)  The Court cannot agree.  As noted above, Horry County has put forth evidence demonstrating the substantial interest it has in minimizing the negative secondary effects of adult entertainment establishments.  In light of Horry County's concerns about protecting the health, safety and welfare of it citizens, preserving the character of surrounding neighborhoods, and deterring the spread of urban blight (ECF No. 48-2 at 1; ECF No. 48-3 at 1), Plaintiffs have not shown that the balance of the equities tips in their favor.

### 4.    **Injunctive Relief in the Public Interest**

Finally, Plaintiffs argue that it is in the public interest to uphold a constitutional right.  (ECF No. 37-1 at 30.)  The Court has concluded that Plaintiffs have not met their burden in demonstrating a constitutional violation of their First Amendment rights.  Thus, "preserving enforcement of the zoning ordinance and privilege license scheme is in the public interest, tending to mitigate or eliminate

deleterious secondary effects." *Mom N Pops*, 979 F. Supp. at 395.

## CONCLUSION

"Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by 'a clear showing' that, among other things, it is likely to succeed on the merits at trial." *Real Truth*, 575 F.3d at 345 (internal citation omitted). This requirement is far stricter than the requirement that a plaintiff must demonstrate only a "grave or serious question for litigation." *Id.* at 347. For the reasons stated above, this Court concludes that a preliminary injunction as requested by Plaintiffs should not be granted. Accordingly, Plaintiffs' Motion for a Preliminary Injunction (ECF No. 37) is also DENIED.

IT IS SO ORDERED.

/s/Mary G. Lewis
United States District Judge

March 28, 2014
Florence, South Carolina